[Cite as *State v. Kulchar*, 2011-Ohio-5144.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 10CA6 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| MATTHEW C. KULCHAR, | : | |
| | : | **RELEASED: 09/29/11** |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

K. Robert Toy, TOY LAW OFFICE, Athens, Ohio, for appellant.

C. David Warren, ATHENS COUNTY PROSECUTOR, and George J. Reitmeier, ATHENS COUNTY ASSISTANT PROSECUTOR, Athens, Ohio, for appellee.
_____

Harsha, P.J.

**{¶1}** A jury found Matthew C. Kulchar guilty of complicity to tampering with evidence after Kulchar had an unwitting friend dispose of the boxer shorts he wore during an alleged sexual assault. In this appeal Kulchar contends that the trial court erroneously instructed the jury on the complicity charge. Specifically, he complains that the court instructed the jury that the "innocent person" he allegedly caused to get rid of the boxer shorts did not have to have the mens rea for the crime of tampering with evidence. However, Kulchar appears to acknowledge that the court gave a legally accurate instruction on this point and fails to demonstrate how the court abused its discretion in the wording or format of the instruction. Thus, we reject this argument.

**{¶2}** Kulchar also complains that the court gave an erroneous instruction on the definition of an "investigation." To obtain a conviction on the complicity charge, the

State had to show Kulchar knew that an official proceeding or investigation was in progress, or was about to be or likely to be instituted when he caused the innocent person to get rid of the boxer shorts.  However, the court again gave a legally accurate instruction that generally explained the term "investigation" and then gave an example of an "official investigation."  Moreover, Kulchar fails to show how the court abused its discretion in wording or formatting the instruction.  Therefore, we also reject this argument.

{¶3}   Next, Kulchar claims that the trial court erred when it refused to instruct the jury on complicity to obstructing official business because it constitutes a lesser included offense of complicity to tampering with evidence.  However, a defendant could destroy, conceal or remove evidence with the purpose of impairing its value or availability as evidence in an official proceeding or investigation (i.e. tamper with evidence) without actually hampering or impeding a public official in the performance of his duties (i.e. obstructing official business).  Because a defendant could commit the "greater offense" (tampering) without committing the "lesser offense" (obstruction), complicity to obstructing official business cannot be a lesser included offense of complicity to tampering with evidence.  Therefore, the court did not err in refusing to give the instruction.

{¶4}   In addition, Kulchar claims that his conviction was against the manifest weight of the evidence and that insufficient evidence supports his conviction because the boxer shorts did not constitute "evidence."  However, the State need not show that the shorts would have actually contained evidence.  Rather, it only needed to prove that Kulchar instructed his friend to get rid of the shorts with the purpose of impairing their

value or availability as evidence. Because the State's version of events supported such a conclusion, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice. Therefore, Kulchar's conviction was not against the manifest weight of the evidence and was supported by sufficient evidence.

{¶5} Next, Kulchar argues that the trial court erred when it denied his "motion for mistrial" based on the State's failure to disclose inconsistent statements Reddick made prior to the start of trial. Kulchar actually made a motion to dismiss the charges. However, we review a trial court's denial of either type of motion for an abuse of discretion. Here, the timing of the State's disclosures did not violate former Crim.R. 16 or the decision of the United States Supreme Court in *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. Therefore, we find that the court did not abuse its discretion in denying Kulchar's motion.

{¶6} In addition, Kulchar contends that his sentence is contrary to law because the court failed to adequately consider R.C. 2929.11 and R.C. 2929.12 when it sentenced him. However, the court had no obligation to make specific findings concerning the various factors in these statutes and its sentencing entry expressly states that the court considered the relevant statutory provisions. Because Kulchar cites no other failure of the trial court to comply with the "applicable rules and statutes," his sentence is not clearly and convincingly contrary to law.

{¶7} Finally, Kulchar claims that the trial court abused its discretion when it found that he was not amenable to community control and sentenced him to three years in prison. However, the court cited valid reasons for Kulchar's sentence. And contrary to Kulchar's contentions, the record does not support a finding that the court imposed

the prison term to punish him for rape because the court believed the jury erroneously acquitted him of that charge. We cannot reach such a conclusion on mere speculation. The trial court's decision to sentence Kulchar to three years in prison was not unreasonable, arbitrary, or unconscionable. Accordingly, we affirm the trial court's judgment.

## I. Facts

{¶8} The Athens County Grand Jury indicted Kulchar on one count of rape, one count of kidnapping, and one count of tampering with evidence. The State ultimately pursued a complicity to tampering with evidence charge instead of the principal offense of tampering with evidence. See R.C. 2923.03(F). A jury found Kulchar not guilty of rape and kidnapping but found him guilty of complicity to tampering with evidence, in violation of R.C. 2923.03(A)(4), a third-degree felony.

{¶9} At trial, the State claimed that early one morning Kulchar forced Ashley Reddick to engage in sexual conduct with him over the course of several hours. Reddick testified that she had her "period" at the time and told Kulchar that in an effort to stop him. However, Kulchar forced her to have vaginal intercourse anyway, and in the process pushed the tampon she had in deep into her vagina, causing pain. She pleaded with him to let her go to the bathroom to remove the tampon. Kulchar initially refused but eventually took her to the bathroom. Kulchar admitted that he and Reddick engaged in sexual conduct but claimed that it was consensual. Kulchar claimed that Reddick never mentioned her period and testified that he would not have had sex with Reddick had she been on her period. Kulchar denied seeing any blood when he and Reddick had intercourse. Although Reddick's sheets from the incident with Kulchar had

stains she claimed were blood, the State did not have the sheets tested.

{¶10}  Kyle Ruddy, Kulchar's college roommate, testified that the day of the alleged rape Kulchar told Ruddy that he had sex with Reddick for hours.  In the evening, Kulchar sent Ruddy a text message asking him to throw Kulchar's SpongeBob SquarePants boxers in the trash.  Ruddy showed the text to a friend, Jeffrey Kolada, and they laughed because they thought the message was ridiculous.  Ruddy thought Kulchar was joking, and responded via text, "[W]hat?"  Kulchar responded, "[D]o it."  Ruddy testified that he went to the room he shared with Kulchar, put the boxers in a trash bag, and put the bag in the dumpster behind their dorm.  Kulchar later texted Ruddy, "[D]one?"  Ruddy responded, "[Y]es."  Ruddy testified that he did not see any stains or blood on the boxers.  When Ruddy learned about Reddick's allegations, he immediately told police what happened.

{¶11}  Unbeknownst to Ruddy, Kulchar had been arrested and had one hand cuffed to a chair at the Ohio University Police Department when he sent these text messages.  At trial, Kulchar admitted that he sent the texts, but he denied knowing that he had been suspected of or arrested for Reddick's rape at the time.  Kulchar said he thought the arrest might be related to marihuana since he and Reddick used the drug before having intercourse.  When Lieutenant Christopher Johnson interviewed him prior to the arrest, Kulchar tried to "dance[ ] around" Johnson's questions about marihuana use.

{¶12}  However, Kulchar admitted that when the OUPD interviewed him prior to his arrest, Lieutenant Johnson asked him a number of questions about his sexual contact with Reddick.  Johnson asked Kulchar if Reddick had her period during their

encounter.  Johnson asked him about the underwear he wore with Reddick, and Kulchar told him he had on plaid boxer shorts.  Kulchar told Johnson that he would bring the boxers in the next day.  At one point during the interview, Johnson asked Kulchar if he wanted to change his story because another officer could not locate the condom he claimed to use with Reddick in the location he said he put it.  After his arrest, Kulchar remembered he had in fact worn the SpongeBob SquarePants boxers.  Instead of correcting the misstatement, Kulchar claimed he texted Ruddy to get rid of the boxers to avoid the appearance that he was a liar.

{¶13}  After the jury found Kulchar guilty of the complicity charge and the trial court sentenced him, this appeal followed.

## II.  Assignments of Error

{¶14}  Kulchar assigns the following errors for our review:

ASSIGNMENT OF ERROR NO. 1:  The trial court erred to the prejudice of defendant in failing to impose a sentence consistent with the principles and purposes of sentencing under Ohio R.C. §2929.11 and proper consideration of the seriousness in [sic] recidivism factors under Ohio R.C. §2929.12.

ASSIGNMENT OF ERROR NO. 2:  The trial court erred to the prejudice of defendant, and in violation of his rights under the 14th amendment to the Constitution of the United States, by entering judgment against the defendant on the charge of Complicity to Tampering with Evidence, as the evidence was insufficient to sustain the conviction, or, in the alternative, the conviction was against the manifest weight of the evidence.

ASSIGNMENT OF ERROR NO. 3:  The trial court erred in overruling Appellant's motion for mistrial due to prosecutor misconduct which occurred during the trial and which deprived Appellant his constitutional right to due process.

ASSIGNMENT OF ERROR NO. 4:  The trial court erred to the prejudice of the Defendant and in violation of his rights under the 14th amendment to the Constitution of the United States by failing to instruct the jury on the lesser included offense of Obstruction of Official Business.

ASSIGNMENT OF ERROR NO. 5: The trial court erred to the prejudice of Defendant and in violation of his rights under the 14th amendment to the Constitution of the United States, and in the trial court's jury instructions concerning the Complicity to Tampering with Evidence [charge].

For ease of analysis, we will address Kulchar's assignments of error out of order.

### III. Jury Instructions on Complicity to Tampering with Evidence

**{¶15}** In his fifth assignment of error, Kulchar contends that the trial court erred when it gave the jury the State's requested instructions on the complicity to tampering with evidence charge. Generally, a trial court should give requested jury instructions if they are "correct statements of the law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction." *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, quoting Markus & Palmer, Trial Handbook for Ohio Lawyers (3 Ed.1991) 860, Section 36:2. Moreover, R.C. 2945.11 requires a trial court to charge the jury with all the law required to return a verdict. Our review concerning whether jury instructions correctly state the law is de novo. *State v. Brown*, Athens App. No. 09CA3, 2009-Ohio-5390, at ¶34. However, reversible error should not be predicated upon one phrase or one sentence in a jury charge; instead, a reviewing court must consider the jury charge in its entirety. *State v. Porter* (1968), 14 Ohio St.2d 10, 13, 235 N.E.2d 520. Moreover, if an instruction correctly states the law, its precise wording and format are within the trial court's discretion. *Brown* at ¶34. To constitute an abuse of discretion, the trial court's decision must be unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.

**{¶16}** R.C. 2923.03, the complicity statute, provides:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

* * *

(4) Cause an innocent or irresponsible person to commit the offense.

(B) It is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender.

* * *

{¶17} R.C. 2921.12(A), the tampering with evidence statute, states:

(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]

* * *

{¶18} The trial court gave the jury the following instructions on the complicity to tampering with evidence charge:

The innocent person did not have to have the mental elements of purpose or knowingly.

* * * The term "investigation" is to be considered in its ordinary sense and given its common ordinary meaning. An "official investigation" includes any investigation conducted by a police officer in his official capacity. * * *

{¶19} Kulchar complains that the trial court erred when it instructed the jury that the "innocent person," i.e. Ruddy, who Kulchar allegedly caused to tamper with evidence "did not have to have the mental elements of purpose or knowingly." Innocent means: "Free from guilt; acting in good faith and without knowledge of incriminatory circumstances, or of defects or objections." Black's Law Dictionary (Abridged 6.Ed. 1991), 542. Thus an innocent person would include one without the mens rea to

commit a crime, i.e. a person without knowledge of incriminatory circumstances.

{¶20} Kulchar appears to acknowledge that the court made an accurate statement of law, noting "[i]f the person was an innocent or irresponsible, how could he knowingly and purposely commit the crime." (Appellant's Br. 25). Nevertheless, Kulchar complains that the instruction somehow constituted error because it was redundant, confused the jury, and led the jury astray. We fail to see how the court's legally accurate instruction, which in essence elaborated on the meaning of the term "innocent," misled the jury. Therefore, we conclude the court did not abuse its discretion in selecting the wording or format of the instruction.[1]

{¶21} Kulchar also complains that after the court instructed the jury that the term "investigation" was "to be considered in its ordinary sense and given its common ordinary meaning[,]" it erroneously told the jury that "[a]n 'official investigation' includes any investigation conducted by a police officer in his official capacity." According to Kulchar, by adding this language about a police officer's investigation to the instruction, the court "took away from the minds of the jury the fact that they could use their ordinary sense and give the word investigation its common, ordinary meaning." Kulchar contends that the court "in fact" told the jury that "anything a police officer does while he is in uniform is an investigation."

{¶22} We disagree with Kulchar's interpretation of the court's instruction. The court did not tell the jury that anything a police officer does in uniform is an investigation. Nor did the court contradict its instruction that the word investigation should be considered in its ordinary sense and given its common meaning. Kulchar's argument

---

[1] Kulchar also tries to argue that the State admitted at trial that it "could not prove the offense" of complicity to tampering with evidence. However, the State merely indicated that Ruddy did not have the mens rea to commit the crime of tampering with evidence himself, i.e. he was an "innocent person."

confuses the word "investigation" with the phrase "official investigation." The court generally instructed the jury on the meaning of the word "investigation." Then the court gave the jury an example of an "official investigation" that relied in part on the court's instruction on the word "investigation."[2] We fail to see how an investigation (as that term is commonly used) conducted by a police officer in his official capacity would not qualify as an "official investigation." We find no legal error in the court's instruction, nor do we find any abuse of discretion in the court's wording or formatting of the instruction. We overrule Kulchar's fifth assignment of error.

IV. Jury Instruction on Lesser Included Offense

{¶23} In his fourth assignment of error, Kulchar contends that the trial court erred when it refused to instruct the jury on a lesser included offense of complicity to tampering with evidence. In reviewing a trial court's decision on whether to give a jury instruction on a lesser included offense, we employ a two-tiered analysis. *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889. First, we must determine whether one offense is in fact a lesser included offense of the charged offense. Id. at ¶26. This presents a question of a law we review de novo. *State v. Braun* (Apr. 21, 1997), Washington App. No. 95CA41, 1997 WL 200719, at *2. In *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, the Supreme Court of Ohio set out a three-part test for courts to make this determination, and in *Evans*, the court clarified that test. One offense is a lesser included offense of another where: (1) one offense carries a greater penalty than the other; (2) some element of the greater offense is not

---

[2] In his brief, Kulchar states that "[t]here was no definition of public official in the court's instruction to [his] jury." (Appellant's Br. 25). It is unclear whether Kulchar claims that this is an error, but in any event, the court did not use the phrase "public official" in its instruction on the complicity to tampering with evidence charge. Therefore, the court had no reason to define it.

required to prove commission of the lesser offense; and (3) the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed. *Evans* at paragraph two of the syllabus. Unless all three components are satisfied, we do not proceed to the second tier of the analysis.

**{¶24}** Kulchar argues that obstructing official business is a lesser included offense of tampering with evidence, so the court should have given the jury a complicity instruction on both offenses. R.C. 2921.12(A) defines tampering with evidence as:

> (A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
>
> (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]

**{¶25}** R.C. 2921.31(A) defines how a person commits the crime of obstructing official business:

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

**{¶26}** As the Fifth District explained in *State v. Dotson* (Mar. 11, 2002), Stark App. No. 2001CA00165, 2002-Ohio-1132, 2002 WL 391690, at *3:

> [O]bstructing official business is not a lesser included offense of tampering with evidence. [*Deem*] requires that the greater offense cannot be committed without the offender committing the lesser offense. An offender can commit the offense of tampering with evidence without violating the obstructing official business statute. One could destroy, conceal or remove evidence with the purpose of impairing a proceeding or investigation without actually hampering or impeding a public official in the performance of his duty.

**{¶27}** In other words, a defendant must *succeed* at hampering or impeding a

public official in the performance of his lawful duties to be found guilty of obstructing

official business. But a defendant need not succeed at impairing an item's value or

availability as evidence for an official proceeding or investigation to commit the crime of

tampering with evidence. Because Kulchar's argument fails part of the *Deem* test,

obstructing official business is not a lesser included offense of tampering with evidence.

{¶28} To the extent Kulchar argues that *Evans* renders *Dotson* inapplicable, he

is mistaken. In phrasing the components of the lesser included offense analysis, the

*Deem* Court stated in part that a court had to find that "the greater offense cannot, as

statutorily defined, *ever* be committed without the lesser offense, as statutorily defined,

also being committed[.]" *Deem*, supra, at paragraph three of the syllabus (Emphasis

added). The *Evans* court clarified *Deem* by deleting the word "ever" from this phrasing.

*Evans*, supra, at ¶25. The *Evans* Court stressed that:

> This clarification does not modify the *Deem* test, but rather eliminates the
> implausible scenarios advanced by parties to suggest the remote
> possibility that one offense could conceivably be committed without the
> other also being committed. *Deem* requires a comparison of the elements
> of the respective offenses in the abstract to determine whether one
> element is the functional equivalent of the other. If so, and if the other
> parts of the test are met, one offense is a lesser included offense of the
> other.

Id.

{¶29} We fail to see how the *Evans* modification invalidates the rationale in

*Dotson*. The *Dotson* court compared the elements of the respective offenses in the

abstract. *Dotson* at *3. Contrary to what Kulchar's primarily fact-based argument

implies, this is the correct approach under *Deem* and the *Evans* clarification. In

deciding whether to give a lesser included offense instruction, the court only looks at the

specific facts surrounding the alleged offense *after* it determines whether the

*Deem/Evans* test is satisfied. *Evans* at ¶13. And "[i]f the evidence is such that a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense, then the judge should instruct the jury on the lesser included offense." Id., quoting *Shaker Hts. v. Mosely*, 113 Ohio St.3d 329, 2007-Ohio-2072, 865 N.E.2d 859, at ¶11.

**{¶30}** Kulchar does not contend that the *Dotson* court relied on an "implausible scenario[ ] advanced by parties to suggest the remote possibility that one offense could conceivably be committed without the other also being committed." Moreover, it is certainly plausible that one could, under the mistaken belief that an item has evidentiary value, destroy, conceal or remove that item with the purpose of impairing a proceeding or investigation without actually hampering or impeding a public official in the performance of his duty. Therefore, we conclude that the trial court did not err when it refused to instruct the jury on complicity to obstructing official business. We overrule Kulchar's fourth assignment of error.

## V. Manifest Weight of the Evidence and Sufficiency of the Evidence

**{¶31}** In his second assignment of error, Kulchar contends that his conviction was against the manifest weight of the evidence and that insufficient evidence exists to support his conviction. "When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction." *State v. Puckett*, Ross App. No. 10CA3153, 2010-Ohio-6597, at ¶34, citing *State v. Pollitt*, Scioto App. No. 08CA3263, 2010-Ohio-2556. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Id.,

quoting *State v. Lombardi*, Summit App. No. 22435, 2005-Ohio-4942, at ¶9, in turn, quoting *State v. Roberts* (Sept. 17, 1997), Lorain App. No. 96CA006462, 1997 WL 600669. Therefore, we first consider whether Kulchar's conviction was against the manifest weight of the evidence.

**{¶32}** "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Brown*, Athens App. No. 09CA3, 2009-Ohio-5390, at ¶24, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. A reviewing court "may not reverse a conviction when there is substantial evidence upon which the trial court could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt." *State v. Johnson* (1991), 58 Ohio St.3d 40, 42, 567 N.E.2d 266, citing *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, at paragraph two of the syllabus.

**{¶33}** Even in acting as a thirteenth juror we must still remember that the weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact. *State v. Frazier*, 73 Ohio St.3d 323, 339, 1995-Ohio-235, 652 N.E.2d 1000, citing *State v. Grant*, 67 Ohio St.3d 465, 477, 1993-Ohio-171, 620 N.E.2d 50. The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio

St.3d 77, 80, 461 N.E.2d 1273 (per curiam).  Thus, we will only interfere if the fact finder clearly lost its way and created a manifest miscarriage of justice.  Moreover, "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required."  *Thompkins* at paragraph four of the syllabus, construing and applying Section 3(B)(3), Article IV of the Ohio Constitution.

{¶34}  Kulchar claims that his conviction was against the manifest weight of the evidence because Ruddy testified that he did not see any stains or blood on the boxers, so the boxers did not constitute "evidence."  Kulchar also appears to argue that even if the boxers did contain physical evidence, that fact would have been irrelevant to the police investigation.  He argues that law enforcement did not have other items, like Reddick's sheets, tested for body fluids.  And he points to testimony members of law enforcement gave to the effect that they did not think such testing was necessary because Kulchar admitted that he had sex with Reddick, making consent the only real issue at trial.

{¶35}  However, R.C. 2921.12(A)(1) only requires that a person "[a]lter, destroy, conceal, or remove any record, document, or thing, *with purpose to impair its value or availability as evidence * * *.*"  (Emphasis added).  It does not require that the State show the item would have in fact contained evidence, particularly in a case such as this where police cannot locate an item due to the defendant's actions.  Moreover, the statute does not require that the State show that police would have found the item material to their investigation, i.e. the State did not have to show that it would have found the boxers pertinent enough to its case that it would have allocated limited

resources to have them tested for body fluids.

{¶36}  The jury chose to believe the State's version of events, and we will not substitute our judgment for that of the finder of fact under these circumstances.  Kulchar admitted that he texted Ruddy and asked him to get rid of the SpongeBob SquarePants boxers.  At the time Kulchar sent the text, he had already been arrested and had one hand cuffed to a chair.  Kulchar claimed that he thought police were interested in his marihuana use, not investigating him for rape.  However, the pre-arrest questions Lieutenant Johnson posed to Kulchar – such as questions about Reddick's period and the type of underwear Kulchar wore during their sexual encounter – discredit Kulchar's claim.

{¶37}  This evidence reasonably supports the conclusion that Kulchar knew police were investigating him for rape  and instructed Ruddy to get rid of the boxer shorts with the purpose of impairing the value or availability of the boxers as evidence in that investigation.  After reviewing the entire record, we cannot say that the jury lost its way or created a manifest miscarriage of justice when it found Kulchar guilty of complicity to tampering with evidence.  Accordingly, we find that Kulchar's conviction was not against the manifest weight of the evidence.  Thus, we necessarily also conclude that sufficient evidence supports his conviction.  We overrule Kulchar's second assignment of error.

## VI.  Motion for Mistrial

{¶38}  In his third assignment of error, Kulchar contends that the court erred when it denied his "motion for mistrial" based on the State's failure to timely provide certain discovery under Crim.R. 16 and *Brady*, supra.  Although Kulchar did raise the

discovery issue during trial, he characterized his motion as one "to dismiss" the charges

against him, not as a "motion for mistrial." However, for either type of motion, we review

the court's ruling for an abuse of discretion. See *State v. Murphy*, Scioto App. No.

09CA3311, 2010-Ohio-5031, at ¶83 (outlining standard of review for trial court's ruling

on motion for mistrial); *State v. Engle*, 166 Ohio App.3d 262, 2006-Ohio-1884, 850

N.E.2d 123 (outlining standard of review for trial court's denial of motion to dismiss).

The phrase "abuse of discretion" implies that the court's decision was unreasonable,

arbitrary, or unconscionable. *Adams*, supra, at 157. And as we explain below, the trial

court did not abuse its discretion when it denied Kulchar's motion.

{¶39} Kulchar contends that before trial began, the State failed to disclose

certain inconsistent statements Reddick made and that failure somehow prejudiced his

defense. Crim.R. 16 outlines rules for discovery in criminal cases. Kulchar points to the

current language of the rule to support his argument that he was entitled to this

discovery prior to trial; however, at the time of Kulchar's prosecution, Crim.R. 16 stated[3]:

> (A) Demand for discovery
>
> Upon written request each party shall forthwith provide the discovery
> herein allowed. Motions for discovery shall certify that demand for
> discovery has been made and the discovery has not been provided.
>
> (B) Disclosure of evidence by the prosecuting attorney
>
> (1) Information subject to disclosure.
>
> * * *
>
> (g) In camera inspection of witness' statement. Upon completion of a
> witness' direct examination at trial, the court on motion of the defendant
> shall conduct an in camera inspection of the witness' written or recorded
> statement with the defense attorney and prosecuting attorney present and
> participating, to determine the existence of inconsistencies, if any,

---

[3] Crim.R. 16 was amended effective July 1, 2010.

between the testimony of such witness and the prior statement.

If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.

If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.

Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal.

* * *

{¶40} Under the plain language of former Crim.R. 16(B)(1)(g), Kulchar was not entitled to any of Reddick's statements before trial. Instead, once the State completed its direct examination of Reddick, Kulchar could move the court to conduct an in camera inspection of any of her statements in his counsel's presence and with his counsel's participation. Therefore, the State did not violate former Crim.R. 16.

{¶41} Nonetheless, Kulchar contends he was entitled to pre-trial disclosure of Reddick's statements under *Brady*. As the Supreme Court of Ohio explained in *State v. Iacona*, 93 Ohio St.3d 83, 88-89, 2001-Ohio-1292, 752 N.E.2d 937:

In the landmark case of *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, the United States Supreme Court held that a criminal defendant may claim denial of due process where the state fails to disclose the existence of potentially exculpatory evidence. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 86, 83 S.Ct. at 1196-1197, 10 L.Ed.2d at 218. But, "[i]n determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. This standard of materiality applies regardless of whether

the evidence is specifically, generally or not at all requested by the defense." *State v. Johnston* (1988), 39 Ohio St.3d 48, 529 N.E.2d 898, [at] paragraph five of the syllabus, following *United States v. Bagley* (1985), 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481. See, also, *State v. Treesh* (2001), 90 Ohio St.3d 460, 475, 739 N.E.2d 749, 767.

**{¶42}** The *Iacona* Court further explained that:

Strictly speaking, *Brady* is not violated when disclosure occurs during trial, even when disclosure surprises the defendant with previously undisclosed evidence. *State v. Wickline* (1990), 50 Ohio St.3d 114, 116, 552 N.E.2d 913, 917. In such a circumstance a trial court has authority, pursuant to Crim.R. 16(E)(3), to grant a continuance or make other orders that the court deems just to ensure that the recently disclosed information can be evaluated, and used at defense counsel's option, before the trial is concluded.

It has, however, been held that the philosophical underpinnings of *Brady* support the conclusion that even disclosure of potentially exculpatory evidence during trial may constitute a due process violation if the late timing of the disclosure significantly impairs the fairness of the trial. [But] [e]ven where information may be exculpatory, "[n]o due process violation occurs as long as *Brady* material is disclosed to a defendant in time for its effective use at trial." *United States v. Smith Grading & Paving, Inc.* (C.A.4, 1985), 760 F.2d 527, 532. See, also, *United States v. Starusko* (C.A.3, 1984), 729 F.2d 256, 262; *United States v. O'Keefe* (C.A.5, 1997), 128 F.3d 885, 898.

Id. at 100. The defendant has the burden to prove a *Brady* violation rising to the level of denial of due process. Id. at 92.

**{¶43}** Kulchar complains that the State waited until after opening statements to give him statements Reddick made in which she: 1.) admitted that she smoked marihuana with Kulchar before the alleged rape; 2.) denied being able to locate her cell phone during the incident with Kulchar. He claims that these statements contradicted other statements Reddick gave about incident with him. However, Kulchar did not request a continuance to review these statements. In addition, Kulchar received the statements before any witnesses testified and he actually used them during trial in an

effort to discredit Reddick. Therefore, Kulchar failed to show that he received the statements at a time when he could no longer effectively use them at trial, and we conclude that no *Brady* violation occurred.

**{¶44}** The State did not violate former Crim.R. 16 or *Brady*. Therefore, the trial court's decision to deny Kulchar's motion was not unreasonable, arbitrary or unconscionable. We overrule his third assignment of error.

VII.   Sentencing

**{¶45}** In his first assignment of error, Kulchar contends that the trial court erred when it sentenced him. In *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, the Supreme Court of Ohio announced the standard for appellate review of felony sentences. We must employ a two-step analysis. First, we must "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Kalish* at ¶4. If the sentence is not clearly and convincingly contrary to law, we review it for an abuse of discretion. Id.

**{¶46}** If the trial court's sentence is outside the permissible statutory range, the sentence is clearly and convincingly contrary to law. *Kalish* at ¶15. Here, the trial court convicted Kulchar of a third-degree felony and sentenced him to three years in prison. Under R.C. 2929.14(A)(3), the statutory prison term range for a third-degree felony is one to five years. Therefore, the trial court imposed a sentence within the permissible statutory range.

**{¶47}** Kulchar also appears to complain that the sentence is clearly and convincingly contrary to law because the court did not consider R.C. 2929.11 and R.C.

2929.12.  Although sentencing courts are "no longer required to make findings or give

their reasons for imposing maximum, consecutive, or more than the minimum

sentences[,]" *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at

paragraph seven of the syllabus, they must still consider R.C. 2929.11 and R.C.

2929.12 before imposing a sentence.  *Kalish* at ¶13.  He contends that these statutes

"clearly call upon the court to evaluate individual characteristics of the defendant" and

that the court failed to evaluate his individual characteristics.  However, in the

sentencing entry, the trial court expressly stated that it considered R.C. 2929.11 and

R.C. 2929.12.  Although the court did not make specific findings concerning the various

factors in these statutes, it had no obligation to do so.  *State v. Taylor*, Athens App. No.

08CA23, 2009-Ohio-3119, at ¶13, citing *State v. Woodruff*, Ross App. No. 07CA2972,

2008-Ohio-967, at ¶16.  Therefore, we reject Kulchar's argument.  And because Kulchar

cites no other failure of the trial court to comply with any other "applicable rules and

statutes," we find that Kulchar's sentence is not clearly and convincingly contrary to law.

{¶48}  Next, we must determine whether the trial court abused its discretion in

selecting Kulchar's sentence.  The term "abuse of discretion" implies that the court's

attitude is arbitrary, unreasonable, or unconscionable.  *Adams*, supra, at 157.  As we

explained in *State v. Davis*, Highland App. No. 06CA21, 2007-Ohio-3944, at ¶42:

> "'An "abuse of discretion" has * * * been found where a sentence is greatly
> excessive under traditional concepts of justice or is manifestly
> disproportionate to the crime or the defendant. *Woosley v. United States*
> (1973), 478 F.2d 139, 147.  * * * Where the severity of the sentence
> shocks the judicial conscience or greatly exceeds penalties usually
> exacted for similar offenses or defendants, and the record fails to justify
> and the trial court fails to explain the imposition of the sentence, the
> appellate court's [sic] can reverse the sentence.  [Id.]  This by no means is
> an exhaustive or exclusive list of the circumstances under which an
> appellate court may find that the trial court abused its discretion in the

imposition of [a] sentence in a particular case.'" [*State v. Elswick*, Lake App. No.2006-L-075, 2006-Ohio-7011], at ¶49, quoting *State v. Firouzmandi*, Licking App. No. 2006-CA-41, 2006-Ohio-5823, at ¶56.

**{¶49}** At the January 4, 2010 sentencing hearing, the trial court made the following statements[4]:

[T]he Court finds that uh, in reaching its decision that the boxers uh, uh, you either knew or suspected that they had something of evidentiary value on them and uh, whether or not the police would of had them tested will [sic] just never know cause they never had them.  And uh, and those were directly due to your actions in uh, in uh, texting Mr. Ruddy to dispose of those pants.  Now as indicated here the Court finds that two of your statements at the trial were not truthful, they didn't make any sense.  And that was your testimony that you made untruthful statements to Chris Johnson because he didn't uh, you indicated you did not want to get caught for marijuana use and lose your scholarship and the chemical test and even though Lieutenant was questioning you about the, the sex and you said it was consensual uh, and that despite that thing going on you texted Mr. Ruddy to get rid of those boxers when you knew the investigation was going on [sic].  Also the Court finds is not believable [sic] the fact that you testified that you did not want to uh, the Lieutenant to think you were a liar uh, when you indicated to him that they were plaid boxers as opposed to those Sponge Bob Square Pants boxers uh, and of course that, so rather than you know, telling him, that oops I made a mistake here Lieutenant you went ahead and texted Mr. Ruddy to get rid of those.  The Court, and of course you've had these two convictions that Mr. Driscoll has referred to for the trespassing and the OMVI and uh, so that would be further indication that recidivism and the Court finds that because of your actions here and I'll, that the more serious factors as I've stated here outweigh less seriousness and the more likely outweigh the less likely uh, because of your convictions and your activities and uh, giving the testimony the Court finds not believable [sic].  So for those areas about destroying the underwear when you knew that the investigation was uh, or the sexual assault was going on, your uh, uh, statements at the trial, I've referred to those two statements, your convictions here uh, the Court as I've indicated finds that your [sic] not amenable for a, placing on community control and uh, will sentence you to three years in prison.

(Emphasis added).

---

[4] The Court held an earlier sentencing hearing on December 16, 2009, but never journalized the sentence it orally imposed at that hearing.  Due to a perceived error at the hearing, the court "vacated" the original, un-journalized sentence and held a new sentencing hearing.

{¶50} Kulchar argues that the court abused its discretion when it sentenced him because "[i]t appears that the court took the serious nature of the charges for which he had been falsely accused and used them in its consideration of sentencing." He inquires, "How else can it be explained that a man is sentenced to prison for having a friend dispose of underwear that the police stat[e] have no evidentiary value[?]" Kulchar points to the court's statement that "the sexual assault was going on" as evidence that the court disagreed with his acquittal on the rape charge and sentenced him to three years in prison to punish him for the rape – not for complicity. Kulchar notes that he was a young college student who only had "a minor trespassing conviction" and OVI conviction on his record. And he argues that the record does not support the court's conclusion that he was not amenable to community control and should be sentenced to three years in prison.

{¶51} Admittedly the court's comment about the sexual assault, when read in isolation, is confusing. However, when read in context with the court's other comments about Kulchar's trial testimony, it is apparent that the court was trying to convey its belief that Kulchar knew police were *investigating* him for an alleged sexual assault when he told Ruddy to get rid of his boxer shorts – a belief entirely consistent with the jury's finding of guilt on the complicity charge. None of the court's statements at the sentencing hearing indicate that the court felt the jury erred when it found Kulchar not guilty of the rape charge or that the court increased Kulchar's sentence to punish him for raping Reddick.

{¶52} And contrary to Kulchar's arguments, the record does not indicate that the court abused its discretion in any other fashion when it found that he was not amenable

to community control and imposed a three year sentence. As specific support for the sentence, the trial court pointed to testimony from Kulchar the court felt lacked credibility and the fact that Kulchar committed two other crimes (OVI and trespassing) after the grand jury indicted him in this case. See *State v. O'Dell* (1989), 45 Ohio St.3d 140, 148, 543 N.E.2d 1220 ("[W]hen a sentencing judge is the same judge who presided over the defendant's trial, the defendant's act of lying under oath is a factor that may be considered along with other pertinent factors when imposing sentence. Accordingly, we hold that the trial court did not abuse its discretion when it considered defendant's demeanor and truthfulness as a witness in light of all the other factors present in this case.") (internal citation omitted); *State v. Collier*, Lorain App. No. 07CA009115, 2008-Ohio-826, at ¶19 (finding trial court did not abuse its discretion in sentencing defendant when it considered "based on its observation of the testimony and demeanor of Defendant, that he lied under oath"). Accordingly, we find that the court did not act in an arbitrary, unreasonable or unconscionable manner when it selected Kulchar's sentence. We overrule his first assignment of error.

## VIII. Conclusion

{¶53} Having overruled each of the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

**<u>JUDGMENT ENTRY</u>**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Kline, J. & McFarland, J.:  Concur in Judgment and Opinion.

For the Court

BY: _____
William H. Harsha, Presiding Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**