[Cite as *State v. Watson*, 2019-Ohio-4385.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

STATE OF OHIO,                                              :

      Plaintiff-Appellee,                          :     Case Nos.   18CA20 & 18CA21

      vs.                                                        :

BROOK N. WATSON,                                      :     DECISION AND JUDGMENT ENTRY

      Defendant-Appellant.                       :

_____

APPEARANCES:

Jenny M. Evans, Gallipolis, Ohio, for appellant.[1]

James K. Stanley, Meigs County Prosecuting Attorney, Pomeroy, Ohio, for appellee.
_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:   10-15-19
ABELE, J.

{¶ 1} This is an appeal from a Meigs County Common Pleas Court judgment of conviction and

sentence.   Brook N. Watson, defendant below and appellant herein, asserts that the trial court erred in

imposing sentence and assigns three errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN SENTENCING MS. WATSON TO
ONE YEAR SHY OF THE MAXIMUM SENTENCE (22 OUT OF 23
YEARS BEING 96.7% OF THE MAXIMUM SENTENCE) WITHOUT
SPECIFIC FINDINGS OF FACT JUSTIFYING THE COURT'S
SENTENCING CONSIDERATIONS AND CONCLUSIONS."

---

[1] Different counsel represented appellant during the trial court proceedings.

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN SENTENCING MS. WATSON TO MAXIMUM, CONSECUTIVE SENTENCES FOR ALLEGATIONS STEMMING FROM THE SAME INCIDENT WITHOUT SPECIFIC FINDINGS OF FACT JUSTIFYING THE CONSECUTIVE SENTENCING CONSIDERATIONS."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT RELIED UPON IMPERMISSIBLE SENTENCING CONSIDERATIONS BY: USING DEFENDANT'S UNVERIFIED CRIMINAL HISTORY WITHOUT A PRE-SENTENCE INVESTIGATION REPORT AND CONSIDERING TESTIMONY REGARDING ALLEGATIONS NOT CONTAINED IN HER CHARGE/CONVICTION, DISCOVERY OR PRESENTED TO THE DEFENSE PRIOR TO ITS INTRODUCTION AT SENTENCING."

{¶ 2} On November 6, 2017, a Meigs County Grand Jury reviewed evidence obtained after a March 28, 2017 traffic stop and returned an indictment that charged appellant with: (1) one count of tampering with evidence (R.C. 2921.12(A)(1)), a third-degree felony; (2) one count of illegal conveyance of drugs (alprazolam) onto the grounds of a detention facility (R.C. 2921.36), a third-degree felony; (3) one count of possession of drugs (heroin) (R.C. 2925.11(A) & (C)(6)(a)), a fifth-degree felony; and (4) one count of possession of drugs (alprazolam) (R.C. 2925.11(A) & (C)(2)(a)), a first-degree misdemeanor.

{¶ 3} Also on November 6, 2017, a Meigs County Grand Jury reviewed evidence obtained after an April 14, 2017 traffic stop and returned an indictment that charged appellant with two counts of possession of drugs (oxycodone and fentanyl)(R.C. 2925.11(A) & (C)(1)(a)), both fifth-degree felonies.

{¶ 4} On March 15, 2018, the Meigs County Grand Jury reviewed additional evidence

regarding yet another allegation that, on March 7, 2018, appellant, along with co-defendants Nathan Grimm and Merissa Starcher, kidnapped, assaulted, and raped the victim before they drove her to a wooded area and Grimm shoved the victim off a cliff. After considering the evidence, the grand jury returned an indictment that charged appellant with (1) one count of felonious assault (R.C. 2903.11(A)(1)), a second-degree felony; (2) one count of kidnapping (R.C. 2905.01(A)(3)), a first-degree felony; (3) one count of conspiracy (R.C. 2923.01(A)(2)), a first-degree felony; (4) one count of complicity to attempted murder (R.C. 2923.03(A)(2)), a first-degree felony; and (5) one count of complicity to rape (R.C. 2923.03(A)(2)), a first-degree felony.

{¶ 5} Initially, appellant pleaded not guilty in all three cases. However, on September 25, 2018 appellant pleaded guilty to the charges of felonious assault and kidnapping (Case No. 18CR073). In exchange for the guilty pleas, appellee agreed to dismiss the charges of conspiracy, complicity to rape and complicity to attempted murder. Appellant also pleaded guilty to the illegal conveyance of drugs onto the grounds of a detention facility and the possession of drugs (Case No. 17CR151). In exchange for appellant's guilty pleas, appellee agreed to dismiss the charges of tampering with evidence and the possession of drugs. Finally, in exchange for appellant's guilty pleas in Case No. 17CR151 and Case No. 18CR073, appellee agreed to dismiss the two counts of possession of drugs (Case No. 17CR178).

{¶ 6} At the September 27, 2018 sentencing hearing, appellee provided to the trial court the underlying facts in each case. The appellee stated that appellant either had a previous romantic relationship with, or romantic feelings for, David McMillan, with whom the victim resided with at that time. McMillan allegedly told appellant that "he wanted the victim to be * * * evicted from the property." Appellee alleged that the victim overheard appellant, Grimm, and Starcher plan the

assault the day before it occurred, and that appellant served as the "ringleader" and "she was the one who engaged them to participate in the conspiracy to * * * assault [the victim] and to kidnap her from that residence and to drive her out to * * * Forked Run and to push her off the cliff in an attempt to kill her. Throughout that morning, uh she was assaulted by all three individuals with various items. * * * she indicated to me * * * a broom, a baseball bat, and some sort of small sledgehammer. * * * During that time * * * [appellant] also maced her [the victim] in the face, which also caused * * * serious physical harm to her person at that time. * * * anything that [appellant] wanted either Nathan Grimm or Merissa Starcher to do to the victim in this case; the victim said that they did it um because she was asking them to. Um, if not for [appellant,] Merissa Starcher and Nathan Grim would have had no reason to engage in this conduct, this type of conduct and to this degree * * * with the victim. Uh, they certainly knew her but they didn't have the sort of, I guess, animosity towards her that [appellant] did at that time." Appellee also stated that the victim had received "death threats" and had "disappeared."

{¶ 7} At this point, the appellee recited the plea agreement into the record. After the trial court fully informed appellant of her various rights that she would waive as a result of her guilty pleas, and after the court thoroughly ascertained the voluntariness of her pleas, the court accepted appellant's guilty pleas and found her guilty. The court then sentenced appellant to serve thirty-six months in prison for the illegal conveyance charge and twelve months for the possession charge (Case No. 17CR151) to be served concurrently with each other, but consecutively to the sentence imposed in Case No. 18CR073. In Case No. 18CR073, the court sentenced appellant to serve eight years in prison on the felonious assault charge and eleven years on the kidnapping charge, to be served consecutively to each other and consecutively to the sentence in Case No. 17CR151, for a

total sentence of twenty-two years. Also, pursuant to the terms of the plea agreement, appellee moved to dismiss: (1) two counts of possession (Case No. 17CR178), (2) the charges of tampering and possession (Case No. 17CR151), and (3) the charges of conspiracy to attempted murder and conspiracy to rape (Case No. 18CR073).

{¶ 8} Also, at the sentencing hearing, some discussion occurred that addressed the fact that co-defendant Nathan Grimm, who actually pushed the victim off the cliff, received a lesser fifteen year sentence. Appellee maintained, however, that although Grimm admitted to the attempt to kill the victim, the "only reason he tried to kill her was because he was engaged in this conspiracy with appellant. He had no independent conflict with uh the victim that the State's aware of that would cause him to engage in felonious assault, kidnapping, and attempted murder. * * * [H]e did that at the request * * * of [appellant] to engage in that conduct and that behavior."

{¶ 9} This appeal followed.

I.

{¶ 10} In her first assignment of error, appellant asserts that the trial court erred in sentencing appellant to serve one year less than the maximum prison sentence without setting forth specific findings of fact to justify the court's sentencing considerations and conclusions. Appellee, however, correctly contends that "maximum sentences do not require specific findings." *State v. Sawyer*, 4th Dist. Meigs No. 16CA2, 2017-Ohio-1433, ¶ 16, citing *State v. McClain*, 4th Dist. Pickaway No. 13CA17, 2014-Ohio-4192, ¶ 36; *State v. Lister,* 4th Dist. Pickaway No. 13CA15, 2014-Ohio-1405, ¶ 10, citing *State v. White,* 2013-Ohio-4225, 997 N.E.2d 629, (1st Dist.), ¶ 7.

{¶ 11} R.C. 2953.08 provides for appeals based on felony sentencing guidelines. Pursuant to R.C. 2953.08(G)(2), an appellate court may increase, reduce, modify, or vacate and remand a

challenged felony sentence if the court clearly and convincingly finds either "that the record does not support the sentencing court's findings" under the specified statutory provisions, or "the sentence is otherwise contrary to law." *State v. Mitchell*, 4th Dist. Meigs No. 13CA13, 2015-Ohio-1132, ¶ 11; *State v. Brewer*, 4th Dist. Meigs No. 14CA1, 2014-Ohio-1903, at ¶ 37.

{¶ 12} R.C. 2929.11 requires that when a court determines a sentence for a felony offender, the court shall be guided by the overriding purposes of felony sentencing, which is to protect the public from future crime and to punish the offender using the minimum sanctions to accomplish those purposes without imposing an unnecessary burden on state or local government resources. "To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.11. R.C. 2929.12 provides a non-exhaustive list of factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses. *Sawyer* at ¶ 17; *Lister* at ¶ 15. Although a trial court is required to consider the R.C. 2929.12 factors, "the court is not required to 'use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors (of R.C. 2929.12)'" *Sawyer* at ¶ 19, citing *State v. Latimer*, 11th Dist. Portage No. 2011-P-0089, 2012-Ohio-3745, ¶ 18, quoting *State v. Webb*, 11th Dist. Lake No. 2003-L-078, 2004-Ohio-4198, ¶ 10, quoting *State v. Arnett,* 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000). "[A] maximum sentence is not contrary to law when it is within the statutory range and the trial court considered the statutory principles and purposes of sentencing as well as the statutory seriousness and recidivism factors." *Sawyer* at ¶ 20, quoting *State v. Talley*, 2016-Ohio-8010, 74 N.E.3d 868, ¶ 15 (2d Dist.).

{¶ 13} Our review of the record reveals that the trial court did, in fact, consider the pertinent statutory principles and purposes of sentencing, as well as consider the R.C. 2929.11 and 2929.12 seriousness and recidivism factors, before it sentenced appellant to serve sentences that are within the permissible statutory range.   As such, we believe that the record supports the trial court's sentence and is not clearly and convincingly contrary to law.

{¶ 14} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

## II.

{¶ 15} In her second assignment of error, appellant asserts that the trial court erred by sentencing appellant to serve maximum, consecutive sentences for acts that stem from the same incident, without providing specific findings of fact to justify the consecutive sentences.

{¶ 16} Under the tripartite procedure set forth in R.C. 2929.14(C)(4) for imposing consecutive sentences, a trial court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that one of three circumstances specified in the statute applies.  *See State v. Baker*, 4th Dist. Athens No. 13CA18, 2014-Ohio-1967, ¶ 35-36.   The three circumstances are:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses

committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 17} A trial court must make these findings at the sentencing hearing and incorporate its findings in its sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. "The trial court need not use talismanic words to comply with R.C. 2929.14(C)(4), but it must be clear from the record that the trial court actually made the required findings." *State v. Campbell,* 4th Dist. Adams No. 13CA969, 2014-Ohio-3860, at ¶ 25. Further, although a trial court must make the required findings before it imposes consecutive sentences, the court is not required, under R.C. 2929.14(C)(4), to state reasons to support its findings to impose consecutive sentences. *Bonnell* at syllabus. Moreover, this court has held that a trial court is under no obligation to make specific findings under the various factors set forth in these statutes. *See State v. Kulchar,* 4th Dist. Athens No. 10CA6, 2015-Ohio-3703, ¶ 47.

{¶ 18} In the case sub judice, we reject appellant's contention that the consecutive sentences are contrary to law and unsupported by the record. Here, the trial court considered the record, oral statements, the impact on the victim, the plea agreement, the R.C. 2929.11 principles and purposes of sentencing, and the court also balanced the R.C. 2929.12 seriousness and recidivist factors. In Case No. 17CR151 and Case No. 18CR073, the court indicated that the sentence must be served consecutively to the sentence imposed in the reciprocal case, and stated: "The Court makes the appropriate findings to impose said consecutive sentence as required by Section 2929.14(C)(4) of the Revised Code." In particular, the trial court determined that consecutive sentences are necessary to

protect the public from future crime and to punish the offender.   Obviously, the court recognized the serious and egregious conduct that appellant engaged in and believed that consecutive sentences are appropriate and warranted.    The court also determined that consecutive sentences are not disproportionate to the seriousness of the appellant's conduct and to the danger that appellant poses to the public.   Moreover, the trial court (1) determined that appellant committed at least two of the offenses as part of a course of conduct, and (2) in view of the harm appellant caused, no single prison term will adequately reflect the seriousness of appellant's conduct.

{¶ 19} Appellant also argues that Crim.R.32(A)(4) specifically states that the court "shall * * * [i]n serious offenses, state its statutory findings *and give reasons supporting those findings* if appropriate."   In *Bonnell*, the Supreme Court of Ohio addressed the interplay between R.C. 2929.14(C)(4) and Crim.R. 32(A)(4) and wrote "R.C. 2929.14(C)(4) requires the trial court to make statutory findings prior to imposing consecutive sentences, and Crim.R. 32(A)(4) therefore directs the court to state those findings at the time of imposing sentence.  *Bonnell* at ¶ 26.   As to where those findings are made, the court continued:

> "When imposing consecutive sentences, a trial court must state the required findings as part of the sentencing hearing, and by doing so it affords notice to the offender and to defense counsel.  *See* Crim.R.32(A)(4).   And because a court speaks through its journal, *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, ¶ 47, the court should also incorporate its statutory findings into the sentencing entry. However, a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld."

*Id.* at ¶ 29; *Campbell*, *supra,* at ¶ 25; *State v. Gray*, 8th Dist. Cuyahoga No. 98970, 2014–Ohio–4668; *State v. Greene*, 8th Dist. Cuyahoga No. 100542, 2014–Ohio–3713.   In the case sub judice, after our review, we conclude that the trial court properly imposed consecutive sentences

and the sentence is not contrary to law.

{¶ 20} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

## III.

{¶ 21} In her final assignment of error, appellant asserts that the trial court improperly relied upon numerous impermissible sentencing considerations. In particular, appellant argues, inter alia, that the court used an unverified criminal history without a pre-sentence investigation report, considered testimony or statements regarding various allegations that are not contained in appellant's charges, convictions, discovery or presented to the defense prior to sentencing, and also failed to fully consider and credit the fact that appellant did not actually push the victim off the cliff.

{¶ 22} Appellant claims that the trial court weighed her history of drug addiction against her, but failed to consider whether she had received or engaged in drug treatment. Thus, appellant reasons, the court "could not have supported its alleged inferred conclusion that her imprisonment was necessary to protect the public from future crime or punish the defendant." Our review, however, reveals that appellant engaged in numerous serious, multiple acts of criminal conduct, regardless of her history of addiction or treatment. Numerous other reasons exist to incarcerate appellant in order to protect the public other than her involvement with, or her treatment for, the abuse of controlled substances.

{¶ 23} Next, appellant asserts that the trial court failed to fully take her conduct into account because, as she points out, she did not actually physically push the victim off the cliff or use a deadly weapon. Thus, appellant argues, the victim did not suffer injuries as a result of appellant's participation in the assault. However, appellee points out that the felonious assault conviction is not

based on serious physical harm caused from the push off the cliff, but rather for causing, or attempting to cause, serious physical harm by beating the victim with a deadly weapon (broom, bat or sledgehammer) and using pepper spray on the victim's eyes. R.C. 2923.11(A) defines a deadly weapon as "any instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon." The use of these objects to inflict harm in the manner in which the crimes were committed satisfy the statutory requirement.

{¶ 24} Appellant also contends, citing *State v. McDaniel*, 141 Ohio App.3d 487, 751 N.E.2d 1078 (2001), that (1) the appellee's statements do not support the view that the victim unwillingly got into the car; and (2) although the prosecution charged appellant with kidnapping and not attempted murder, the appellee nevertheless appeared to argue that appellant's actions exhibited an intent to kill the victim. Thus, appellant argues, rather than cause harm to the victim, appellant merely intended that the victim "have a cold walk home." However, we first point out that, at the change of plea hearing, appellant stipulated that sufficient evidence established the offense of kidnapping, which includes using force to remove the victim from the place where the victim was found. Second, the statements indicate that appellant intended to cause the victim serious physical harm. Thus, statements concerning the nature of harm inflicted on the victim are appropriate matters for the court to consider in determining the appellant's sentence.

{¶ 25} Appellant also asserts that appellee should not have argued that appellant did not display remorse because, she maintains, appellant actually checked to see whether the victim was alive before she left the scene. However, we point out that when given an opportunity to address the court, appellant did not express remorse for her crimes. Moreover, even her own trial counsel acknowledged that no one climbed over the cliff to assist the victim.

{¶ 26} Appellant also argues that, although appellee did not charge her with threatening the victim or with preventing the victim from appearing at the sentencing hearing, appellee indicated that the victim had received death threats and gave the appearance that appellant had engaged in additional, serious conduct. Our review of the transcript, however, does not indicate that appellee alleged that appellant had attempted to discourage the victim from attending any court hearing. Rather, the statements appear to have been intended to show the seriousness of the crimes and the psychological harm that the victim suffered. Although appellee's statements may have been somewhat inartfully worded, we do not believe that the prosecution alleged that appellant threatened the victim to not attend the hearing. Furthermore, even if these statements rose to the level of error, we would nevertheless conclude that no reversible error occurred because appellee offered an overwhelming amount of information to suggest that, once again, appellant served as the ringleader and orchestrated the entire course of criminal conduct that resulted in the kidnap, assault, rape, and attempted murder of the victim. As such, we believe that any potential error regarding the prosecutor's statements at sentencing constitutes, at most, harmless error. See Crim.R. 61.

{¶ 27} Finally, appellant asserts that (1) the trial court should have ordered a pre-sentence investigation to confirm, or to rebut, the prosecution's assertion that appellant did not express remorse, and (2) the lack of a pre-sentence investigation report demonstrates that the court did not sufficiently review the recidivism factors, appellant's criminal history or other proper sentencing considerations. However, as appellee points out, a pre-sentence investigation is only required in cases when a trial court imposes community control. Crim.R. 32.2 states: "Unless the defendant and the prosecutor in the case agree to waive the presentence investigation report, the court shall, in felony cases, order a presentence investigation and report before imposing community control

sanctions or granting probation." R.C. 2951.03(A)(1) specifically states that "[n]o person who has been convicted of or pleaded guilty to a felony shall be placed under a community control sanction until a written presentence investigation report has been considered by the court." The Supreme Court of Ohio has held that "the plain text of Crim.R. 32.2 and R.C. 2951.03(A)(1) also places an unavoidable duty on the trial court to obtain a presentence investigation report in every felony case in which a prison sentence is not imposed." *State v. Amos*, 140 Ohio St.3d 238, 2014-Ohio-3160, 17 N.E.3d 528, ¶ 15.

{¶ 28} In the case at bar, appellant did not seek or receive a community control sanction, nor was it likely, due to the seriousness of the charges, that the trial court would sentence her to serve a community control sanction. Thus, a pre-sentence investigation report is not required under the circumstances present in this case.

{¶ 29} Accordingly, based on the reasons set forth above, we overrule appellant's third assignment of error and we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
       Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.