[Cite as *State v. Hawkins*, 2014-Ohio-1224.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | Case No. 13CA3 |
| v. | : | |
| | | <u>DECISION AND</u> |
| LEE A. HAWKINS, | : | <u>JUDGMENT ENTRY</u> |
| Defendant-Appellant. | : | RELEASED 03/21/2014 |

<u>APPEARANCES:</u>

Timothy Young, Ohio Public Defender, and Peter Galyardt, Assistant Ohio Public Defender, Columbus, Ohio, for Defendant-Appellant.

C. Jeffrey Adkins, Gallia County Prosecuting Attorney, Eric R. Mulford, Gallia County Assistant Prosecuting Attorney, and Britt T. Wiseman, Gallia County Assistant Prosecuting Attorney, Gallipolis, Ohio, for Appellee.

Hoover, J.

{¶ 1} Defendant-appellant, Lee A. Hawkins, appeals his sentence in the Gallia County Common Pleas Court received after a jury found him guilty of aggravated murder, tampering with evidence, and abuse of a corpse. In his first assignment of error, Hawkins contends that the trial court's sentence of life imprisonment without the possibility of parole for the aggravated murder conviction was unreasonable, and an abuse of its discretion. Under Ohio law, however, we lack authority to review a sentence imposed by a trial court for aggravated murder. Accordingly, Hawkins's first assignment of error is without merit.

{¶ 2} Hawkins also argues, in his second assignment of error, that he received ineffective assistance from his trial counsel. Specifically, Hawkins contends that his trial counsel should

have sought waiver of the imposition of court costs at his sentencing hearing. Because evidence exists that Hawkins has the ability to pay court costs, we cannot say that he was prejudiced by his counsel's failure to seek waiver of such costs. Accordingly, we affirm the judgment of the trial court.

{¶ 3} On February 29, 2012, David Ball worked a double-shift at the Kyger Creek Power Plant.[1] After work, Mr. Ball returned to his home and beef cattle farm in Morgan Township, Gallia County, Ohio, around 12:05 A.M. Mr. Ball immediately noticed several occurrences at his residence that were unusual. Most notably, there were signs of a disturbance in his garage including: moved objects, a piece of fabric on the hood of his wife's Subaru vehicle, a shoe under the Subaru, scratches on the hood of the Subaru, and his wife's glasses and cell phone on the passenger seat floorboard of the Subaru. After a brief search of his property and residence, Mr. Ball realized that his wife, Betsy Ball, was missing.

{¶ 4} The Gallia County Sheriff's Office and the Ohio Bureau of Criminal Investigation ("BCI") immediately launched an investigation into the disappearance of Mrs. Ball. A tip from the local community lead law enforcement to a secluded field off an unpaved road in rural Gallia County –an approximate 6 minute drive from the Ball residence – where the deceased body of Mrs. Ball was discovered around noon on March 1, 2012. Mrs. Ball was found naked from the waist down, her shirt and bra had been lifted to expose her breasts, and her legs had been spread apart. Mrs. Ball's face and arms had been bruised and scratched; and ligature furrows were visible around her neck and wrists. A large cut, approximately 1 inch deep extended from hip to hip across Mrs. Ball's abdomen. Mrs. Ball's right wrist was also lacerated, almost severed completely. There were also visible tire tracks across the jaw and upper body of Mrs. Ball,

---

[1] The following statement of facts highlights certain evidence that may be helpful in understanding the nature and severity of the crime. It does not document all the evidence that was offered at trial.

indicating that she had been run over by a vehicle. Finally, her body had been doused in gasoline. It was determined after an autopsy that the primary cause of death was strangulation, and that the manner of death was homicide.

{¶ 5} A search of the field revealed several key pieces of evidence. Importantly, there were visible tire tracks extending from the gravel roadway, into the field near where Mrs. Ball was discovered, and then extending back towards the roadway. Investigators were able to determine that the source vehicle had two all-terrain tires on the front of the vehicle, and two "mudder tires" on the rear of the vehicle. Also located near the body was a partial hand towel that appeared to be stained by bodily fluids.

{¶ 6} On March 12, 2012, investigators learned that Hawkins owned a Ford F-150 pick-up truck with all-terrain tires on the front, and mudder tires on the rear. Hawkins had known the Ball family for 20 years, as he worked as a farmhand on their property. Hawkins also knew that Danny Ball was working a double-shift on February 29, 2012, and would not be returning home until late in the evening. Hawkins agreed to make a voluntary statement to law enforcement and initially denied knowing anything about the disappearance and murder of Mrs. Ball. Upon further questioning, however, Hawkins made several contradictory remarks. For instance, Hawkins at one point indicated that he witnessed but did not participate in the offense. Then, Hawkins stated that he was forced by a third person to put Mrs. Ball in his truck and help dispose of the body.

{¶ 7} Scientific analysis of several pieces of evidence linked Hawkins to both crime scenes. For instance, Hawkins's fingerprints were found on several areas of the Subaru in the Ball's garage. Moreover, it was determined that the partial hand towel found in the field

contained a mixture of Hawkins's semen and Mrs. Ball's blood. A swab of Mrs. Ball's vagina also revealed the presence of Hawkins's semen.

{¶ 8} On March 15, 2012, Hawkins was indicted by a grand jury on one count of aggravated murder, in violation of R.C. 2903.01(A), a special category felony; one count of murder, in violation of R.C. 2903.02(A), a special category felony; one count of tampering with evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree; and one count of abuse of a corpse, in violation of R.C. 2927.01(B), a felony of the fifth degree. Hawkins pled not guilty to all counts; and the trial court heard pre-trial arguments on the admissibility of certain evidence. The case ultimately proceeded to a jury trial; and Hawkins was found guilty of aggravated murder, tampering with evidence, and abuse of a corpse. The trial court sentenced Hawkins to life in prison without the possibility of parole for the aggravated murder conviction, and to 36 months in prison for the tampering with evidence conviction.[2] It was further ordered that the sentences be served consecutively, and that Hawkins pay the costs of prosecution. This matter is now before this Court on delayed appeal.

{¶ 9} On appeal, Hawkins asserts the following assignments of error:

First Assignment of Error:

> The trial court abused its discretion when it sentenced Lee Hawkins to life without parole. Fourteenth Amendment, United States Constitution; Section 16, Article I, Ohio Constitution. Tr. 1130-1136.

Second Assignment of Error:

> Lee Hawkins was deprived of his constitutional right to the effective assistance of counsel. Fifth, Sixth, and Fourteenth Amendments, United States Constitution; Sections 10 and 16, Article I, Ohio Constitution. Tr. 1125-1126.

{¶ 10} In his first assignment of error, Hawkins argues that the trial court abused its discretion by imposing the maximum sentence - life without the possibility of parole - for his

---

[2] The trial court found that the tampering with evidence conviction and the abuse of a corpse conviction were allied offenses of similar import, and the state elected to proceed to sentencing on the tampering with evidence conviction.

aggravated murder conviction. Specifically, Hawkins contends that the sentence is unreasonable because he "lived a primarily law-abiding life" and is a "quiet, hard-working, decent person." Hawkins characterizes his actions against Mrs. Ball as "an aberration from his normal, quiet self[.]"

{¶ 11} Hawkins was sentenced to life without the possibility of parole pursuant to R.C. 2929.03(A)(1), which provides in pertinent part:

(A) If the indictment or count in the indictment charging aggravated murder does not contain one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, then, following a verdict of guilty of the charge of aggravated murder, the trial court shall impose sentence on the offender as follows:

(1) Except as provided in division (A)(2) of this section, the trial court shall impose one of the following sentences on the offender:

(a) Life imprisonment without parole;

(b) Subject to division (A)(1)(e) of this section, life imprisonment with parole eligibility after serving twenty years of imprisonment;

(c) Subject to division (A)(1)(e) of this section, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment;

(d) Subject to division (A)(1)(e) of this section, life imprisonment with parole eligibility after serving thirty full years of imprisonment; * * *

{¶ 12} This Court, in its principal opinion, recently declined to review a felony sentence under the two-step approach first declared in *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. *See State v. Bever*, 4th Dist. Washington No. 13CA21, 2014-Ohio-600, ¶¶

8-13.[3] Rather, the principal opinion applied the standard set forth in R.C. 2953.08. Several other Ohio appellate courts have abandoned the *Kalish* approach, and now review felony sentences in accordance with R.C. 2953.08. *See State v. White*, 2013-Ohio-4225, 997 N.E.2d 629, ¶ 9 (1st Dist.) ("Thus, henceforth, we will apply the statutory standard rather than the *Kalish* plurality framework to our review of felony sentences."); *State v. Worth,* 10th Dist. Franklin No. 10AP–1125, 2012–Ohio–666, ¶ 83 (the court applied the statutory test and noted that, as a plurality opinion, *Kalish* is of limited precedential value); *State v. Rodeffer*, 2nd Dist. Montgomery Nos. 25574, 25575, & 25576, 2013-Ohio-5759, ¶ 29 ("In order to be consistent with the approach of other Ohio appellate districts that have already considered this issue in light of H.B. No. 86, we will no longer apply the two-part test in *Kalish* when reviewing felony sentences controlled by H.B. 86. From now on we will use the standard of review set forth in R.C. 2953.08(G)(2)."); *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 7 ("Accordingly, we find that the standard of review set forth in R.C. 2953.08(G)(2) shall govern all felony sentences."); *State v. Crawford*, 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, ¶ 6 ("[F]rom this day forward, rather than continue to apply the two-step approach as provided by *Kalish,* we find 'the standard of review set forth in R.C. 2953.08(G)(2) shall govern all felony sentences.' "); *State v. Fletcher*, 3rd Dist. Auglaize No. 2-13-02, 2013-Ohio-3076, ¶ 14 (utilizing R.C. 2953.08 to review a trial court's imposed sentence); *State v. Tammerine*, 6th Dist. Lucas No. L-13-1081, 2014-Ohio-425, ¶¶ 10, 16 ("Given recent legislative action in Ohio, culminating in the passage of a new statute directly addressing appellate court felony sentence review and a growing body of recent appellate cases applying the new statutory parameters, we are no longer utilizing the former *Kalish* approach. *** Based upon all of the foregoing, we now likewise apply the

---

[3] But see the concurring opinion of Harsha, J., in which Judge William H. Harsha suggests that the *Kalish* approach may still be appropriate in certain circumstances.  See also Judge Matthew W. McFarland's vote in the case, in which he concurred in judgment only.

statutory standard of review rather than the former *Kalish* approach to our review of felony sentences."). R.C. 2953.08(D)(3) provides that "[a] sentence imposed for aggravated murder or murder pursuant to sections 2929.02 to 2929.06 of the Revised Code is not subject to review under this section."

{¶ 13} Neither Hawkins nor the State of Ohio discussed the applicability of R.C. 2953.08(D)(3) in their briefs to this Court. However, both the Fifth District Court of Appeals and the Second District Court of Appeals have recently addressed whether the statute prevents appellate courts from reviewing a life sentence for aggravated murder. *See State v. Patterson*, 5th Dist. Stark No. 2012CA00098, 2013-Ohio-1647 (Faced with determining whether sentence of life imprisonment without the possibility of parole for aggravated murder conviction was against the manifest weight of the evidence); *State v. Jones*, 2nd Dist. Clark No. 2012CA61, 2013-Ohio-4820 (Dealing with assignment of error in which appellant argued that the trial court abused its discretion when it sentenced him to life imprisonment without the possibility of parole for aggravated murder conviction).

{¶ 14} Both courts cite R.C. 2953.08(D)(3) and *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, for the proposition that evidentiary review of a sentence imposed by a trial court pursuant to R.C. 2929.02 through 2929.06 is precluded. *Patterson* at ¶ 67; *Jones* at ¶ 22. Both courts also quote an identical passage from the Eighth District Court of Appeals, for the proposition that the General Assembly has long treated aggravated murder and murder sentencing differently from other felony sentencing:

> "The General Assembly's practice of treating sentencing for aggravated murder
> and murder convictions differently from other felonies is longstanding.  Before
> the 1996 Senate Bill 2 felony sentencing amendments, the courts likewise held

that the general felony sentencing requirements did not apply in aggravated

murder cases. * * * Defendant has shown nothing to indicate that the General

Assembly intended to change this well-established sentencing practice and the

comprehensive sentencing scheme in aggravated murder and murder cases."

*Patterson* at ¶ 69, quoting *State v. Hollingsworth*, 143 Ohio App.3d 562, 569, 758 N.E.2d 713

(8th Dist.2001); *Jones* at ¶ 25, quoting *Hollingsworth* at 569. Finally, both courts conclude that

"[p]ursuant to R.C. 2953.08(D)(3) and case law interpreting this statute, this Court is without

statutory authority to review appellant's sentence on an evidentiary basis." *Patterson* at ¶ 70;

*Jones* at ¶ 26.

{¶ 15} While we are not bound by the opinions of our sister districts, in this instance we

find the *Patterson* and *Jones* decisions persuasive. It is evident that the General Assembly

intended to treat sentencing on aggravated murder and murder convictions differently from other

felony sentences. *See Porterfield* at ¶¶ 17-18 ("R.C. 2953.08(D) is unambiguous. * * * [A]

sentence imposed for aggravated murder is not subject to review by a court of appeals."); *State v.

Broe*, 1st Dist. Hamilton No. C-020521, 2003-Ohio-3054, ¶ 90 ("Sentencing for murder and

aggravated murder falls under a special, comprehensive statutory scheme different from that

applied to other felonies."). Thus, like the courts in *Patterson* and *Jones*, we find that pursuant to

R.C. 2953.08(D)(3), we lack statutory authority to review Hawkins' sentence on an evidentiary

basis. Accordingly, Hawkins's first assignment of error is overruled.

{¶ 16} In his second assignment of error, Hawkins contends that he received ineffective

assistance from counsel because his trial counsel failed to move for the waiver of court costs.

Essentially, Hawkins argues that he is indigent, cannot pay the costs of prosecution, and that the

trial court would not have ordered him to pay court costs had his trial counsel sought waiver of such costs.

{¶ 17} Criminal defendants have a right to counsel, including a right to the effective assistance from counsel. *See McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), fn. 14; *State v. Stout*, 4th Dist. Gallia No. 07CA5, 2008-Ohio-1366, ¶ 21. To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (Citations omitted.) *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *See State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other."). In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999).

{¶ 18} R.C. 2947.23(A)(1) mandates that "[i]n all criminal cases * * * the judge or magistrate shall include in the sentence the costs of prosecution * * * and render a judgment against the defendant for such costs." "Despite the fact that R.C. 2947.23(A) requires a judge to

assess court costs against all criminal defendants, the Supreme Court of Ohio has held that 'waiver of costs is permitted – but not required – if the defendant is indigent.' " *State v. Stone*, 4th Dist. Scioto No. 11CA3462, 2013-Ohio-209, ¶ 28, quoting *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 11. At the time Hawkins was sentenced, it was undisputed that the proper time for a criminal defendant to move for waiver of court costs was at the time of sentencing. *Stone* at ¶ 29.[4]

{¶ 19} When considering a claim that trial counsel was ineffective based on a failure of counsel to seek waiver of court costs, the test applied by Ohio courts is whether a reasonable probability exists that the trial court would have found appellant indigent had such waiver been sought. *State v. Doss*, 4th Dist. Gallia No. 09CA20, 2012-Ohio-883, ¶ 19. "A determination that appellant was indigent requires that the court consider both present and future ability to pay the * * * costs." *Id*. at ¶ 21.

{¶ 20} Certainly, Hawkins's future ability to pay the costs is suspect, as he will be incarcerated for the remainder of his life. Upon reviewing the record, however, we are not persuaded that Hawkins lacks the present ability to pay the court costs. It was adduced at trial, inter alia, that Hawkins had been employed by Mr. and Mrs. Ball as a farmhand for at least 15 of the previous 20 years; that Hawkins is married and owns a trailer home; and that Hawkins owns a pick-up truck. Therefore, we cannot conclude that a reasonable probability exists that Hawkins would have been found indigent had his counsel raised the issue. Consequently, we cannot find that trial counsel's performance was constitutionally ineffective for failing to raise the issue. Hawkins's second assignment of error is overruled.

---

[4] R.C. 2947.23 was amended after Hawkins was sentenced.  Pursuant to 2012 Sub.H.B. No. 247, effective March 22, 2013, R.C. 2947.23(C) now states that "[t]he court retains jurisdiction to waive, suspend, or modify the payment of the costs of prosecution * * * at the time of sentencing *or at any time thereafter*."  (Emphasis added.)

{¶ 21} Having considered and overruled both of Hawkins's assignments of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & McFarland, J.: Concur in Judgment Only.

For the Court

By:_____
           Marie Hoover, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.