[Cite as *State v. Sawyer*, 2017-Ohio-1433.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

STATE OF OHIO,                          :
                                        :       Case No.  16CA2
        Plaintiff-Appellee,             :
                                        :
        vs.                             :       DECISION AND JUDGMENT
                                        :       ENTRY
AMANDA D. SAWYER,                       :
                                        :
        Defendant-Appellant.            :       **Released: 04/11/17**
_____
APPEARANCES:

Timothy Young, Ohio Public Defender, and Francisco E. Lüttecke, Assistant Ohio State Public Defender, Columbus, Ohio, for Appellant.

Colleen S. Williams, Meigs County Prosecutor, and Jeremy L. Fisher, Assistant Meigs County Prosecutor, Pomeroy, Ohio, for Appellee.
_____

McFarland, J.

{¶1}  Amanda D. Sawyer appeals the February 23, 2016 judgment entry of sentence of the Meigs County Court of Common Pleas by which she received a nine-year consecutive term of imprisonment.  Appellant contends the trial court erred as follows: (1) by sentencing her to the maximum sentence for a third-degree felony; and (2) by imposing consecutive sentences when the requisite findings were not wholly supported by the record.  She also contends she was rendered the ineffective assistance of counsel due to her attorney's failure to file an affidavit of indigency and a

motion to waive court costs.  Upon review, we find no merit to Appellant'sargument.  We further find Appellant's sentence is supported by the record and is not contrary to law.  As such, the assignments of error are overruled and the judgment of the trial court is affirmed.

## FACTS

{¶2}  Appellant was indicted on or about August 21, 2015 on four counts: robbery, a felony of the second degree, in violation of R.C. 2911.02(A)(2); robbery, a felony of the third degree, in violation of R.C. 2911.02(A)(3); kidnapping, a felony of the second degree, in violation of R.C. 2905.01(A)(2); and robbery, a felony of the second degree, in violation of R.C. 2911.02(A)(1).  The counts stemmed from events which occurred on June 2, 2015 at the Farmers Bank in Tuppers Plains, and from events which occurred on July 27, 2015 at a different location near the TNT gas station. Both sets of events occurred in Meigs County, Ohio.

{¶3}  On June 2, 2015, Appellant entered the Farmers Bank's branch office wearing a partial disguise and carrying a toy gun which initially appeared to be a silver pistol.  Appellant demanded money, was provided approximately $6,529.00, and fled the scene.  However, she avoided being apprehended at that time.

{¶4} Then, on July 27, 2015, Appellant's vehicle was pulled over for failure to display a license plate. Upon further investigation, it was determined Appellant had a knife and gloves in her car, as well as the necessary license plate and bolts to attach it in the front seat. Appellant was taken to the police department for questioning and later admitted she was the person who robbed the Farmers Bank in Tuppers Plains. She further admitted she had been en route to rob the TNT gas station when the officer undertook the traffic stop.

{¶5} Appellant was eventually indicted on the four counts. The Court found she was indigent and appointed an attorney to represent her. After pretrial hearings, exchange of discovery, and a motion to suppress hearing, Appellant and the State of Ohio reached a plea agreement. On December 10, 2015, Appellant formally agreed to plead guilty to Counts 1 and 4, both robberies, and in exchange, the State would move to dismiss counts 2 and 3. Further, the State would amend Count 4 robbery to a felony of the third degree. The State further advised it would be recommending a six-year sentence on Count 1 and a thirty-six month sentence on Count 4, to be served consecutively. Appellant also agreed to make restitution to the bank.

{¶6} At her plea hearing, Appellant agreed to the following statement of the facts of the charges against her:

"* * * [O]n June the 2nd, the defendant entered the Farmers Bank in Tuppers Plains, Meigs County, Ohio. At that time, it wasn't immediately evident that she was wearing a disguise. It was believed that she had a pair of pantyhose over her head and wig on her head. She was carrying a silver firearm, which at least one of the victims in this case had indicated was a pistol that was silver in color and may have had an orange tip. Upon reflection, it was believed that the gun was a toy. However, it was not immediately evident to all of the tellers in the bank. At that time, she had indicated that they should put their hands up. She then went to obtain money from the tellers and she had obtained it's believed to be six thousand five hundred and twenty-nine dollars, ($6,529.00) from the tellers at the bank, who were in fear for their safety at the time, upon her behavior, her brandishing this handgun and making what they believed to be threatening gestures with it, as I would describe what they believe to be due to the nature of her requests. She was also carrying a Dollar General bag at the time. She then left the bank and was able to abscond with the [$6,529.00]. * * * All the tellers were in fear for their safety at the time of that incident on June the 2nd."

{¶7} Regarding her second conviction, the stipulated facts were as

follows:

"* * * [O]n July 27, 2015, Officer Hupp got behind Miss Sawyer's vehicle on Route Seven (7) in Chester, Meigs County, Ohio. He then conducted a traffic stop due to the fact that she was missing a license plate. He had just a feeling about the situation. He did some further investigations, realized that her, concluded that her rear license plate was actually in the front seat of her car, that the bolts were there. It was determined that she, in fact, had a knife in her vehicle as well as gloves at that time. He brought her back to the police department for further questioning and upon those questioning (sic), Miss Sawyer admitted that she was, in fact, the person that had robbed Tuppers Plains bank in Meigs County, Ohio and also that her intention on July 27, 2015, had been that she was preparing to rob TNT gas station, which was in the approximate area where

Deputy Hupp had located her. * * * But she had taken actions necessary in order to commit the robbery, including obtaining the gloves and the knife and removing the rear license plate and the front plate was, in fact, bent up to help conceal her identity. That gas station was also located in Meigs County, Ohio."

{¶8}  Appellant's sentencing hearing, deferred for pre-sentence investigation, was conducted on February 19, 2016.  Three representatives of Farmers Bank addressed the court.  Jessica Staley, branch manager of the bank, informed the court that although she was not in the building at the time of the crime, she had seen firsthand the trauma that the bank employees had experienced from the event.  She also advised that the bank had been forced to take additional measures to ensure the employees' mental well-being and safety.  Ms. Staley stated:

> "This has affected all of the employees, whether they were inside the building that day or not * * *.  The ones that were there feared for their lives and they wondered if they would see their families that night. * * * When you see a weapon, you don't know if it's real, if it's loaded or if the person is desperate enough to use it, so you have to assume the worst.  And this fear is something that doesn't go away. * * * Our customers were also affected. * * * The customers feared both for their own safety and also for ours.  They were very upset that they thought our safety was threatened."

> * * *

> "As a result of this robbery in an attempt to take every measure to prevent this from happening again, we have changed the whole atmosphere of our whole office by keeping our doors locked at all times and buzzing our customers one by one.  This was an added expense to our budget as we had to replace the

existing doors and locks and we have taken other steps to increase our security cameras and upgraded other areas of our security system. All of this was an additional expense on top of money that was actually taken during the robbery. * * * [T]he employees that lived through this have had their lives permanently altered. They continue to come to work because they need to work but they now carry a new fear with them every day."

{¶9} Cindy Durst, who was working the day of the robbery, also

addressed the court as follows:

"We were getting ready to close that day. * * * When I looked up at the doors, I saw this lady in the vestibule. I knew there was something strange but it took a couple of seconds to understand what was going on. * * * I saw a woman coming in not looking right, normal. She had a wig on, sunglasses and a pair of hose over her face. I can't remember everything she said but she kept looking at everyone repeating 'Hands up. Hands up.' * * * I also remember I just wanted to get this person out of the building."

* * *

"Our branch has been robbed before so a lot of different things was going through my mind. This woman came in making her way to the first window to where a teller was but she had no drawer. She was told there was no money there. She went to the second window, which there was no one there. She went back to the first window and I remember saying 'Here. Take my money. I just wanted this person to leave. She came over and took all the money I had in my drawer. While she was doing this, she kept looking at the workers and saying 'Hands up.' * * *"

* * *

"I can't describe to you the feeling of being at your workplace and having this person take away the freedom and the safe

being that you should have while you're at work. * * * And how does the law take into effect that the person who done this lives in our community? It makes it (inaudible) just a very uncomfortable situation."

{¶10} Mike Lieving, in charge of several branch offices, testified similarly that the robbery had affected the employees' lives, their families, customers, and the community. The robbery had changed the way the Farmers Bank provides services. All three representatives asked the court to impose the maximum penalty.

{¶11} Appellant expressed remorse at sentencing. She made a statement in which she apologized to everybody involved and their families, and stated she never wanted to hurt anyone. Appellant advised the court that at the time the crimes were committed, her husband was out of work, they were about to lose their home, and she did not have food for her children. The record indicates Appellant had been a law-abiding person prior to the charged incidents. Her counsel pointed out during the proceedings, she had been out of jail on bond with no problems, and that she had obtained a job.

{¶12} Defense counsel argued for a four-year sentence on Count 1 and a sentence of five years' community control on the amended Count 4, with an underlying three-year sentence, as well as the opportunity for judicial release after six months. The State argued for imposition of the sentence previously recommended to the court.

**{¶13}** Subsequently, Appellant was sentenced to a six-year term of imprisonment on Count 1 and a thirty-six month sentence on Count 4. She was also ordered to pay restitution to the bank and to pay court costs. This timely appeal followed.

ASSIGNMENTS OF ERROR

"I. THE TRIAL COURT ERRED WHEN IT SENTENCED MS. SAWYER TO THE MAXIMUM SENTENCE FOR A THIRD-DEGREE FELONY."

"II. THE TRIAL COURT ERRED WHEN IT IMPOSED CONSECUTIVE SENTENCES WHEN ONE REQUISITE FINDING WAS WHOLLY UNSUPPORTED BY THE RECORD."

"III. TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN IT FAILED TO PROPERLY REQUEST WAIVER OF COURT COSTS."

A.  STANDARD OF REVIEW FOR
FELONY SENTENCES

**{¶14}** Pursuant to R.C. 2953.08(G)(2) an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either "that the record does not support the sentencing court's findings" under the specified statutory provisions, or "the sentence is otherwise contrary to law." *State v. Mitchell,* 4th Dist. Meigs No. 13CA13, 2015-Ohio-1132, ¶ 11; *State v. Brewer,* 4th Dist. Meigs No. 14CA1, 2014-Ohio-1903, at ¶ 37. Appellant challenges the

correctness of her sentence in the first two assignments of error.  For ease of

analysis, we consider them jointly.

## B.  LEGAL ANALYSIS

1.  Is the Maximum Sentence Imposed on Count 4 Unsupported by the
Record or Otherwise Contrary to Law?

{¶15}  Appellant argues that the trial court erred when it sentenced

her to the maximum sentence of thirty-six months on Count 4, a third degree

felony robbery which "barely got off the ground."  Appellant acknowledges

that trial courts have full discretion to impose terms of imprisonment within

a statutory range, and further, that they must consider the sentencing

purposes of R.C. 2929.11 and the guidelines contained in 2929.12.

However, Appellant argues it is unclear how she could properly receive a

maximum sentence for an attempted crime when her actual conduct

demonstrates the "inchoate nature" of that attempt.  Appellant requests this

court to vacate her sentence on Count 4, and sentence her to the statutory

minimum sentence of nine months in prison or, in the alternative, vacate her

sentence and remand for resentencing.

{¶16}  Maximum sentences do not require specific findings. *State v.*

*McClain,* 4th Dist. Pickaway No. 13CA17, 2014-Ohio-4192, ¶ 36. *State v.*

*Lister*, 4th Dist. Pickaway No. 13CA15, 2014-Ohio-1405, ¶ 10, citing *State*

*v. White*, 2013-Ohio-4225, 997 N.E.2d 629, (1st Dist.), ¶ 7.  Although trial

courts have full discretion to impose any term of imprisonment within the statutory range, they must consider the sentencing purposes in R.C. 2929.11 and the guidelines contained in R.C. 2929.12. *Lister, supra,* at ¶ 14.  H.B. 86 amended R.C. 2929.11 and states:

> "(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both."

{¶17}  R.C. 2929.12 also provides a non-exhaustive list of factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses. *Lister, supra,* at ¶ 15.  Appellant emphasizes as to the Count 4 conviction:

> 1)  There were no victims, the offense was a curtailed attempt, and her profession or position was not part of the crime;
>
> 2)  She had a strong provocation due to her financial difficulty and substantial mitigation due to near abandonment and non-commission of the crime; and,
>
> 3)  She had no prior convictions and showed genuine remorse, which supported the likelihood that she would not be committing crimes in the future.

{¶18}  At sentencing, defense counsel strongly emphasized the above considerations, accentuating that she did not cause or expect to cause physical harm to any persons or property.  The State's argument, however, that Appellant's conduct was more serious was phrased in this manner:

> "I would also ask the Court to consider the risk of serious physical harm in the second case.  What the defendant is asking you to do is to examine that case only through the fact that she was stopped before it was committed. * * * But if it was not for the good and forward thinking and observations of the officer, she would've likely gone to the TNT Pitstop and put them in even more risk of serious physical harm as she had a knife with her to rob the TNT Pitstop, and that was after she had already robbed the bank.  So I would ask the Court to consider that and also consider that under the fact that recidivism is more likely and under the circumstances that after one crime was committed, she didn't go back to leading a law-abiding life, she went to create more victims at a second crime that was only stopped by the police prior to her being able to commit the crime."

{¶19}  While the trial court is required to consider the R.C. 2929.12 factors, "the court is not required to 'use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors (of R.C. 2929.12.)' " *State v. Latimer,* 11th Dist. Portage No. 2011-P-0089, 2012-Ohio-3845, ¶ 18, quoting *State v. Webb*, 11th Dist. Lake No. 2003-L-078, 2004-Ohio-4198, ¶ 10, quoting *State v. Arnett,* 88 Ohio St.3d 28, 215, 724 N.E.2d 793 (2000). The Supreme Court of Ohio in *State v. Adams,* 37 Ohio St.3d 295, 525

N.E.2d 1361 (1988), has held: "[a]silent record raises the presumption that a trial court considered the factors contained in R.C. 2929.12." *Latimer, supra,* quoting *Adams*, paragraph three of the syllabus.

{¶20} Here, as to Appellant's maximum sentence on Count 4, the trial court stated only that there was no guidance as to sentencing, other than the purposes and principles of sentencing. "[A] maximum sentence is not contrary to law when it is within the statutory range and the trial court considered the statutory principles and purposes of sentencing as well as the statutory seriousness and recidivism factors." *State v. Talley,* 2nd Dist. Lucas No. L-15-1187, 2016-Ohio-8010, ¶ 15. Upon our review of the record, we find the trial court's imposition of the maximum thirty-six month sentence on Count 4 is not clearly and convincingly contrary to law. At the outset, we are not entirely unsympathetic to Appellant's plight as a mother of two children facing financial hardship within the troubled economy and jobless rates of southeastern Ohio. And, we find it highly admirable that her record does not indicate prior drug or alcohol use or abuse, or a prior criminal record.

{¶21} However, the trial court stated that it considered the sentencing guidelines and apparently agreed with the State that her conduct constituted a serious form of the offense. We reject the argument that suggests that a

mandatory sentence cannot be imposed for an attempt to commit a crime.

By its very nature, an attempt to commit an offense means only that the

offender did not accomplish the intended goal. Appellant was stopped near

the gas station with a knife in her possession and she admitted she was going

to the gas station with the purpose to commit robbery. She had the means by

which to cause serious physical and emotional harm to employees and

customers at the gas station and she intended to steal from the business. The

unexpected traffic stop was the only intervening factor which stopped her

from accomplishing her intended goal.

{¶22} Further, Appellant had enjoyed a measure of "success" with

regard to the first robbery almost two months prior, committed without her

being apprehended and apparently having spent the money stolen from the

bank. While expressing remorse at sentencing, she apparently did not

beforehand experience remorse to a degree that caused her to turn herself in

to the authorities, return the money, or that prevented her from taking

significant steps to commit another robbery. Indeed, Appellant was stopped

just past the gas station. The officer who initiated the stop noticed she was

driving so slowly that he thought she was going to pull in to the gas station.

She confirmed during the subsequent investigation that when she realized a

deputy was behind her, she continued on her way. This conduct can be interpreted to suggest that the court considered recidivism to be more likely.

{¶23} We find no reason to believe the trial court did not evince the requisite consideration of the purposes of felony sentencing, R.C. 2929.11, and the seriousness and recidivism factors of R.C. 2929.12. Based upon the foregoing, we find the trial court's maximum sentence on Count 4 is supported by the record and is not clearly and convincingly contrary to law. As such, we find no merit to Appellant's first assignment of error. We hereby overrule the first assignment of error and affirm the sentence of the trial court.

2. Is the Consecutive Nature of Appellant's Sentence Unsupported by the Record or Otherwise Contrary to Law?

{¶24} Appellant also argues that while the trial court ostensibly made the requisite findings to impose consecutive sentences in her case, the findings are not supported by the record. The trial court stated as follows at sentencing:

> "So the Court also finds that consecutive sentences are
> necessary to protect the public and to punish the defendant.
> Also that they are not disproportionate and further that the harm
> is so great or unusual that a single term does not adequately
> reflect the seriousness of the conduct of the offender."

{¶25} "[I]n order to impose consecutive terms of imprisonment, a trial court is required to make findings mandated by R.C. 2929.14(C)(4) at

the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell,* 140 Ohio St.3d 209- 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 29.  A failure to make the findings required by R.C. 2929.14(C)(4) renders a consecutive sentence contrary to law. *Mitchell, supra; Bever* at ¶ 17; *State v. Stamper,* 12th Dist. Butler No. CA2012-08-166, 2013-Ohio-5669, ¶ 23. Specifically, the sentencing court must find that: (1) "the consecutive sentence is necessary to protect the public from future crime or to punish the offender"; (2) "the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and (3) one of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶26} Appellant contends the second and third findings were wholly unsupported by the record, given the circumstances of the second conviction which she characterizes as a "prevented" or "aborted" attempted robbery with no victims and carried out at a "base level." When sentencing an offender, each case stands on its own unique facts. *Mitchell, supra,* at ¶ 28. *Lister, supra*, at ¶ 13, citing *State v. Stamper,* 12th Dist. Butler No. CA2012-08-166, 2013-Ohio-5669, ¶ 15, quoting *State v. Mannarino,* 8th Dist. Cuyahoga No. 98727, 2013-Ohio-1795, ¶ 58.

{¶27} Appellant first argues that the second finding made by the trial court, "that they are not disproportionate," is not supported by the record. However, the full language of the statute reads: "the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." As set forth at length above, three representatives of the Farmers Bank spoke at length about their fears of serious physical harm the day of the robbery, the emotional effect upon the employees, customers, and family members, and the additional cost and inconvenience to make the bank premises more secure. And, as argued above by the State, the seriousness of the attempt of the second robbery was that Appellant created a serious risk of physical harm. While the first robbery was accomplished with a disguise and a toy gun, Appellant had the

means to create serious physical harm with the knife discovered in her car. Furthermore, as previously discussed, Appellant did in fact pose a danger to the public in that she had completed one robbery two months earlier and, but for the traffic stop, would have completed a second one. We disagree with Appellant's argument that the second consecutive sentence finding, the disproportionality of the seriousness of the conduct and the danger posed to the public, was not clearly and convincingly supported by the record.

{¶28} Appellant further argues that the circumstances of the Count 4 robbery conviction belies the third finding that "two offenses caused a harm so great that one term would not reflect the seriousness of her conduct." Again, the testimony of the bank representatives who spoke at sentencing belies her argument that the harm was not so great and a lesser sentence would be appropriate to the seriousness of her conduct. The bank representatives' testimony, despite the fact it is presented to us now through a cold transcript, clearly and convincingly supports the conclusion that the harm was so great that no single term would reflect the seriousness of her conduct. They spoke at length about their immediate safety concerns, the ongoing emotional trauma experienced by employees and customers, and the considerable cost to the bank to implement additional security measures. And again as to the Count 4 conviction, Appellant had the means available

to her to cause serious risk of physical harm and was only, by chance, prevented from completing a robbery and possible physical injuries.

{¶29} For the foregoing reasons, we find the trial court's imposition of a consecutive sentence pursuant to R.C. 2929.14 is supported by the record and not clearly and convincingly contrary to law. As such, we overrule the second assignment of error and affirm the decision of the trial court.

### A.  STANDARD OF REVIEW FOR INEFFECTIVE ASSISTANCE CLAIMS

{¶30} Criminal defendants have a right to counsel, including a right to the effective assistance from counsel. *State v. Arnold,* 4th Dist. Meigs No. 11CA21, 2014-Ohio-264, ¶ 16. *See McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, (1970), fn. 14; *State v. Stout,* 4th Dist. Gallia No. 07CA5, 2008-Ohio-1366, ¶ 21. To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, (1984); *see also State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001*); State v. Goff,* 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding

would have been different." (Citations omitted.) *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "Failure to establish either element is fatal to the claim." *Arnold, supra*, quoting *State v. Jones,* 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *See State v. Madrigal,* 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other."). In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun,* 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999).

## B. LEGAL ANALYSIS

**{¶31}** R.C. 2947.23(A)(1) mandates that "[i]n all criminal cases * * * the judge or magistrate shall include in the sentence the costs of prosecution * * * and render a judgment against the defendant for such costs." *State v. Hawkins,* 4th Dist. Gallia No. 13CA3, 2014-Ohio-1224, ¶ 18. "Despite the fact that R.C. 2947.23(A) requires a judge to assess court costs against all criminal defendants, the Supreme Court of Ohio has held that 'waiver of costs is permitted—but not required—if the defendant is indigent.' " *State v. Stone,* 4th Dist. Scioto No. 11CA3462, 2013-Ohio-209, ¶ 28, quoting *State v. Joseph,* 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 11. The court may grant a waiver of court costs only if the defendant makes a motion at the time of sentencing. *State v. Clevenger,* 114 Ohio St.3d 258, 2007-Ohio-4006, 871 N.E.2d 589, at ¶ 5, citing *State v. Threatt,* 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, paragraph

two of the syllabus. If the defendant fails to make a motion to waive court costs at the time of sentencing, "the issue is waived and [the matter of] costs [is] res judicata." *Id.*

{¶32} Appellant contends her trial counsel was ineffective for failing to file an affidavit of indigency on her behalf and move for waiver of court costs prior to her sentencing. She emphasizes she was found to be indigent for purposes of appointment of counsel and committed her crimes due to financial circumstances. She also points out she must also eventually pay restitution when she leaves prison, presumably at age 40. Appellant concludes that there was a reasonable probability that she would have been found indigent by the sentencing court, had her counsel rendered effective assistance by filing the affidavit and making the motion.

{¶33} When considering a claim that trial counsel was ineffective based on a failure of counsel to seek waiver of court costs, the test applied by Ohio courts is whether a reasonable probability exists that the trial court would have found appellant indigent had such waiver been sought. *State v. Schall,* 4th Dist. Vinton No. 14CA695, 2015-Ohio- 49, at ¶ 50*; State v. Doss,* 4th Dist. Gallia No. 09CA20, 2012-Ohio-883, ¶ 19. "A determination that appellant was indigent requires that the court consider both present and future ability to pay the * * * costs." *Id.* at ¶ 21.

{¶34} This court has recognized in prior cases that either a defendant's future ability to pay costs or current financial situation may be bleak. In *Doss, supra*, the Presentence Investigation Report (PSI) indicated Doss attended high school to the eleventh grade. Appellant answered "yes" when asked if in "good health" and further responded in the negative when asked about any "physical problems" or whether one had been to a mental health clinician. Doss had no income, including no "welfare," but also had two children which might make her eligible for such monies in the future. Appellant also had no expenses, except for monies owed to another Court. She lived with her stepmother. We determined, however, given the information in the PSI and that she would be in her twenties and healthy when she completed her prison sentence, that she did not lack the future ability to pay the fine and court costs. Therefore, we did not conclude a reasonable probability existed that appellant would have been found indigent had her counsel raised the issue and did not find that trial counsel's performance was constitutionally ineffective.

{¶35} In *Hawkins, supra,* we commented that the defendant's future ability to pay the costs was suspect, as he would be incarcerated for the remainder of his life. However, review of the record did not persuade us that Hawkins lacked the present ability to pay the court costs. Hawkins had been employed as a farmhand for 15 years previously. Hawkins was married and owned both a trailer and a pick-up truck. Again, we could not conclude a reasonable probability existed that Hawkins would have been found indigent had his counsel raised the

issue and, consequently, could not find that trial counsel's performance was constitutionally ineffective for failing to raise the issue.

{¶36} And, in *Schall,* we observed the defendant would be incarcerated for at least thirty-three years and potentially for the remainder of his life. Upon review of the record, we were not persuaded that Schall lacked the present ability to pay the court costs. Prior to trial, Schall had worked as a welder, had profited from the sale of real estate just prior to his crime, and had profited from the sale of a shotgun stolen from the victim. Schall, on occasion, worked with a neighbor, doing "some other side things." Again, we could not conclude that a reasonable probability existed that Schall would have been found indigent had his counsel raised the issue and could not find that trial counsel's performance was constitutionally ineffective.

{¶37} We reached a different conclusion in *State v. Rowe,* 197 Ohio App.3d, 2011-Ohio-6614 (4th Dist.). In *Rowe,* we cited *State v. Blade,* 8th Dist. Cuyahoga Nos. 88703, 88704, and 88705, 2007-Ohio-5323. There the record indicated that the court "had previously waived the imposition of court costs against Blade" and that there was "nothing in the record of the resentencing to show a change in Blade's circumstances from the earlier waiver of costs." *Blade* at ¶ 12. Thus, based upon those facts, Blade held that the prior waiver of court costs showed a reasonable probability that it would have again waived costs had counsel made a timely motion. *Id.* at ¶ 13. Thus, the trial court sustained Blade's argument and vacated the trial court's assessment of court costs. *Id.*

{¶38}  In *Rowe,* we determined appellant was found to be indigent, was appointed counsel for trial, and nothing in the record indicated that Rowe's circumstances had changed at the time of sentencing.  Further, the trial court did not impose a fine at sentencing, based upon its "assessment of [appellant's] ability to pay a fine."  Additionally, at the sentencing hearing, Rowe's trial counsel represented to the trial court that appellant was without funds to pursue an appeal.  In light of those facts, there was a good probability that if moved to do so, the trial court would have waived the payment of the court costs.  Therefore, we found trial counsel's performance both deficient and prejudicial.  Consequently, we sustained Rowe's assignment of error and remanded the matter for resentencing as to court costs.

{¶39}  We also recognized in *Rowe* the Twelfth District Court of Appeals' decision in *State v. Smith,* 12th Dist. Warren No. CA2010–06–057, 2011-Ohio-1188, (abrogated on other grounds by *State v. Smith,* 131 Ohio St.3d 297, 2012-Ohio-781, 964 N.E.2d 423.)  There, the appellate court rejected an argument identical to Blade's.  In reaching its conclusion, the appellate court reasoned, based upon the facts before it, that Smith had "failed to show that there is a reasonable probability that the trial court would have waived those costs even if his counsel had asked the court to do so, since the trial court found that while Smith was currently unable to pay the court costs and the cost of his court-appointed counsel, he was young and healthy enough to work and thus would be able to pay those costs in the future." *Id.* at ¶ 64.  Thus, the facts in *Smith* differed

from the facts in *Blade* with regard to the appellant's ability to pay and the probability that the trial court would have waived court costs if a motion to do so had been made. In *Rowe* we concluded that the facts were more similar to facts in *Blade* than to those in *Smith.*[1]

{¶40} We do find this case to be a close call. Similar to *Rowe,* Appellant had counsel appointed in the trial court proceedings. Similar to *Blade* and *Rowe,* the transcript of sentencing is devoid of imposition of fines. However, at sentencing Appellant also acknowledged she had no mental or physical conditions which rendered her unable to understand the proceedings. She advised the court she was 32 years old, had obtained her GED, and had "some college." She verified that she had work experience in the medical field (nursing homes), and "put[ting] together heaters." In addition, Appellant had obtained employment at the time of sentencing and had been working while she had been out on bond.

{¶41} Based on our review of the record, we find counsel was not ineffective for failing to file an affidavit of indigency or motion to waive court costs. The record does not convince us the trial court would have found the lack of a present or future ability to pay the court costs. There is not a reasonable probability that the trial court would have waived costs if counsel had made a timely motion. As such, we overrule the third assignment of error and affirm the judgment of the trial court.

---

[1]        The *Blade* opinion does not contain information as to the appellant's age and ability to work. We note he was given a 10-year prison sentence.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Hoover, J.:  Concur in Judgment Only.

For the Court,


BY:  _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**